SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Paul Songco | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is a Motion for Preliminary Injunction filed by plaintiffs Mutual Pharmaceutical Company, Inc., AR Scientific, Inc., and AR Holding Company, Inc. (collectively "Plaintiffs") (Docket No. 49). Also before the Court is a Motion to Transfer filed by defendant West-Ward Pharmaceutical Corp. ("West-Ward") (Docket No. 66). Defendants Watson Pharmaceuticals, Inc. ("Watson") and Excellium Pharmaceutical, Inc. ("Excellium") have joined in the Motion to Transfer (Docket Nos. 79 & 80). Watson, Excellium, and Vision Pharma, LLC ("Vision") have also filed a Motion to Dismiss (Docket No. 75). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for October 19, 2009, is vacated, and the matters taken off calendar.

I.    Factual Background

Plaintiffs and defendants Watson, West-Ward, Excellium, and Vision (collectively "Defendants")[1] distribute a prescription drug that contains the chemical colchicine as the sole active pharmaceutical ingredient. Colchicine has been used for the treatment of gout flares and Familial Mediterranean Fever ("FMF") since before the Food and Drug Administration ("FDA") came into existence. Until recently, both Plaintiffs and Defendants sold their competing colchicine products without FDA approval. In fact, from January 1999 until January 2006, Plaintiffs apparently obtained their supply of colchicine from Excellium. During this period, the colchicine products distributed by the parties, including Plaintiffs, were listed in various integrated drug dispensing databases and pricing services commonly known as "Price Lists," and made available through drug product ordering systems provided by drug wholesalers and the drug ordering systems maintained by retail pharmacies.

In 2007, Plaintiffs applied to the FDA for an orphan drug designation for its colchicine product. See 21 U.S.C. §§ 360aa-ee. On July 29th and 30th of this year, through the orphan drug approval

---

[1]    Plaintiffs voluntarily dismissed their claims against defendant, Generics Bidco I, LLC.

Case 3:09-cv-05421-PGS-TJB   Document 142   Filed 10/19/09   Page 2 of 10 PageID: 2
Case 2:09-cv-05700-PA-RZ   Document 139   Filed 10/19/2009   Page 2 of 10

SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

process, the FDA granted to Plaintiffs a three-year exclusivity period to market their branded colchicine product – renamed Colcrys – for the treatment of gout flares and a seven-year exclusivity period for the treatment of FMF. After obtaining FDA approval and exclusivity, the price of Plaintiffs' Colcrys increased from approximately $9 per bottle to $485 per bottle. According to Plaintiffs, despite the exclusivity period granted to them by the FDA, Defendants continue to distribute their competing colchicine products at substantially lower prices.

Admitting that only the FDA has the authority to remove drugs from the market, and that any effort seeking from this Court an order removing Defendants' colchicine products from the market would infringe upon the FDA's primary jurisdiction, Plaintiffs, alleging that Defendants are violating the Lanham Act by falsely advertising their colchicine products as being approved by the FDA, commenced this litigation on August 4, 2009, just days after obtaining orphan drug exclusivity. Plaintiffs additionally allege state law claims for unfair business practices and false advertising under common law and California Business and Professions Code sections 17200 and 17500.

In support of their claims, Plaintiffs do not allege that Defendants have made any literally false statements. Instead, Plaintiffs contend that the inclusion of Defendants' colchicine products on the Price Lists and drug ordering systems confuses pharmacists into incorrectly believing that Defendants' products are approved by the FDA. Plaintiffs additionally allege that the labels and product inserts for Defendants' colchicine products falsely imply that they are FDA-approved and safer than Plaintiffs' Colcrys. Plaintiffs' Motion for Preliminary Injunction seeks an order enjoining Defendants from continuing to list their colchicine products on the Price Lists and drug ordering systems, prohibiting Defendants' from distributing their products without labels and inserts containing the information the FDA has required Plaintiffs to provide on their labels and inserts, and in any other way suggesting that their products are FDA-approved.

Defendants oppose the Motion for Preliminary Injunction by arguing that the relief Plaintiffs seek is within the primary jurisdiction of the FDA. Defendants additionally contend that the consumer surveys relied upon by Plaintiffs to support their false advertising claims do not establish that Defendants have made any false statements and that Plaintiffs' requested relief is barred by the doctrine of unclean hands. Defendants also seek to transfer this matter to the District of New Jersey for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). Specifically, West-Ward's Motion to Transfer argues that because Plaintiffs are based in Pennsylvania and Delaware, their selection of the Central District of California as the forum for this action is entitled to no deference. Moreover, with the exception of Watson, the other three remaining defendants are based in New Jersey, and Watson, although headquartered in the Central District, sells pharmaceutical products only through its wholly-owned subsidiary Watson Pharma, Inc. Watson Pharma, Inc. is located in New Jersey. The Motion to Dismiss filed by Watson, Excellium, and Vision is based on the same primary jurisdiction argument Defendants rely on in opposing the Motion for Preliminary Injunction.

SEND
JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|

| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |
|---|---|---|---|

II.  <u>Motion for Preliminary Injunction</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997). However, a preliminary injunction "is not a preliminary adjudication on the ultimate merits." <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1423 (9th Cir. 1984). "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).

To obtain a preliminary injunction a plaintiff must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if the preliminary injunction is not granted; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. <u>Winter v. Natural Res. Def. Council, Inc.</u>, 554 U.S. __ , 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008); <u>Stormans, Inc. v. Selecky</u>, 571 F.3d 960, 977 (9th Cir. 2009). Notably, in <u>Winter,</u> the Supreme Court expressly disapproved the Ninth Circuit's prior standard for granting a preliminary injunction because it allowed an injunction to issue based on a "possibility" of irreparable harm. 554 U.S. at __, 129 S. Ct. at 375. The Supreme Court clarified that "the Ninth Circuit's 'possibility' standard is too lenient. Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." <u>Id.</u>; <u>see also id.</u> at __, 129 S. Ct. at 375-76 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Under Section 43(a) of the Lanham Act, a party may be held liable for placing in interstate commerce a "false or misleading description of fact, or false or misleading representation of fact" that "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To prevail on a false advertising claim under the Lanham Act, a plaintiff must establish that:

> "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."

SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 n.4 (9th Cir. 2002)).

A false statement is one that is "literally false, either on its face or by necessary implication," or one that is "literally true but likely to mislead or confuse customers." Id. "Where a statement is not literally false and is only misleading in context, however, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 258 (9th Cir. 1995). "[I]f the ad is not clear, plaintiff must produce evidence, usually in the form of market research or consumer surveys, showing exactly what message ordinary consumers received from the ad." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:55 (4th ed. 1996). However, at the preliminary injunction stage, "full-blown consumer surveys or market research are not an absolute prerequisite." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002). Still, "the moving party must provide 'expert testimony or other evidence.'" Id. (quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998)); McCarthy, supra, § 27:55 ("[O]n a motion for preliminary injunction, a survey is not always necessary and it is sufficient if plaintiff introduces expert testimony or any other evidence showing that a significant number of consumers received the claimed message from the advertisement.").

"To constitute commercial advertising or promotion, a statement of fact must be: (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. Newcal Indus., 513 F.3d at 1054 (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir.1999)).

In support of their Motion for Preliminary Injunction, Plaintiffs principally rely on a decision issued by another court within the Central District in a very similar action brought by Plaintiffs against a different group of defendants who were distributing a different pharmaceutical for which Plaintiffs had also obtained an orphan drug designation and an exclusivity period from the FDA. See Mutual Pharm. Co. v. Ivax Pharm., Inc., 459 F. Supp. 2d 925 (C.D. Cal. 2006). The defendants in Ivax, like Defendants in this case, relied on the primary jurisdiction doctrine in an attempt to defeat the Motion for Preliminary Injunction:

> The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency. A court's invocation of the doctrine does not indicate that it lacks jurisdiction. Rather, the doctrine is a "prudential" one, under which a court determines

SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

> that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.

Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008) (citation omitted). In issuing the requested preliminary injunction, the Ivax court rejected defendants' primary jurisdiction argument and found that Plaintiffs had established the requisite probability of success on the merits.

Here, however, Defendants have not just relied on the primary jurisdiction doctrine. They also attack the merits of Plaintiffs' false advertising claim, the sufficiency of the evidence presented by Plaintiffs, and the equities of enjoining Defendants from engaging in the very same behavior that Plaintiffs were also engaged in until days before they commenced this litigation. Even assuming that some portion of Defendants' marketing activities are not within the primary jurisdiction of the FDA, this Court still concludes that Plaintiffs have not established a likelihood of success on the merits. Specifically, this Court is reluctant to view the Lanham Act's false advertising provisions as broadly as did the Ivax court. In Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993), for instance, the Fourth Circuit rejected a false advertising claim based on the plaintiff's allegation that the defendants' acts of placing their generic drugs on the market falsely implied FDA approval. In reaching this conclusion, the court held that "permitting [plaintiff] to proceed on the theory that the defendants violated § 43(a) merely by placing their drugs on the market would, in effect, permit [plaintiff] to use the Lanham Act as a vehicle by which to enforce the Food, Drug, and Cosmetic Act ('FDCA') and the regulations promulgated thereunder." Id. In Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 417–18 (S.D.N.Y. 2006), the plaintiff similarly asserted a false advertising claim based on an allegation that the defendant, a generic drug manufacturer, falsely implied FDA approval because it used the trademark of a comparable approved drug in comparative advertisements. The court, citing Mylan, held that the plaintiff could not sustain this claim because the plaintiff did not allege that the defendant made explicit misrepresentations as to FDA approval. Id.

Here, the survey evidence relied upon by Plaintiffs largely establishes only that pharmacists are confused about what the inclusion of a drug on a Price List or drug ordering system means concerning the FDA approval status of a particular drug. As a preliminary matter, the Court is not convinced that having drugs listed on a Price List or drug ordering system maintained by a third party even constitutes a "false statement" in "commercial advertising or promotion" to fall within the scope of the Lanham Act's false advertising provisions. Moreover, there is little evidence that Defendants have in any way created the confusion experienced by pharmacists, or that this confusion is limited to colchicine products. Plaintiffs' contentions concerning the product labels and inserts are even weaker, both because the evidence of confusion is weaker and because disputes concerning the content of those labels and inserts falls even more squarely within the primary jurisdiction of the FDA.

Case 3:09-cv-05421-PGS-TJB   Document 142   Filed 10/19/09   Page 6 of 10 PageID: 6
Case 2:09-cv-05700-PA-RZ   Document 139   Filed 10/19/2009   Page 6 of 10

SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-5700 PA (RCx) | Date | October 19, 2009 |
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

Finally, at least at this preliminary stage, the Court finds that the doctrine of unclean hands substantially decreases the likelihood that Plaintiffs will ultimately prevail on the merits. The equitable defense of unclean hands is applicable to actions under the Lanham Act, including actions seeking injunctive relief. U-Haul Int'l, Inc. v. Jartran, Inc., 522 F. Supp. 1238, 1254 (D. Ariz. 1981) (citing Ames Publ'g Co. v. Walker-Davis Publ'ns, Inc., 372 F. Supp. 1, 13-15 (E.D. Pa. 1974); accord Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3rd Cir. 2001) (unclean hands applicable to false advertising claim). Unclean hands has been applied to bar relief specifically in false advertising cases. See Emco, Inc. v. Obst, 2004 WL 1737355, at *4 (C.D. Cal. May 7, 2004) ("the Court holds that the unclean hands doctrine provides a defense to false advertising claims under the Lanham Act."); but see U-Haul, 522 F. Supp. at 1255 ("[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations. It will be applied 'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'") (quoting Markel v. Scovill Mgf. Co., 471 F. Supp. 1244, 1255 (W.D.N.Y. 1979)). In this instance, the evidence indicates that almost up to the moment they commenced this action, they were engaged in precisely the same activity over which they now seek to enjoin their competitors, including the competitor that previously provided Plaintiffs with their colchicine. Under these circumstances, to issue the preliminary injunction requested by Plaintiffs would be inequitable.

Plaintiffs have also failed to establish a likelihood that they will suffer irreparable harm absent the issuance of injunctive relief. Despite Plaintiffs' protestations to the contrary, this dispute appears to be about money. Should Plaintiffs eventually prevail, they may very well be entitled to damages, but those damages appear to be easily calculable based on defendants' sales. Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1376 (9th Cir. 1985) ("Plaintiff initially claims injury because it will lose circulation and revenue, but as plaintiff seems to admit, this involves purely monetary harm measurable in damages."). Plaintiffs' speculation concerning potential reputational injuries is insufficient to establish entitlement to injunctive relief. For similar reasons, the Court concludes that Plaintiffs' arguments concerning possible adverse health consequences to the public should Defendants be allowed to continue distributing their colchicine products as they have is entirely speculative and therefore does not support the injunction sought by Plaintiffs. Moreover, the Court finds that the equities do not favor Plaintiffs.

For all of the foregoing reasons, the Court concludes that Plaintiffs are not entitled to a preliminary injunction under the Lanham Act. Because Plaintiffs' state law claims are "substantially congruent" to the Lanham Act claims, Plaintiffs are similarly not entitled to an injunction as a result of those claims. See Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

III.   Motion to Transfer

West-Ward's Motion to Transfer seeks to have this action transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties. Of the four remaining defendants, only Watson is located in the Central District. Watson, however, does not itself sell pharmaceutical products. All of Watson's pharmaceutical sales are conducted by its wholly-owned subsidiary that is headquartered in New Jersey. Defendants do not oppose transfer of this action to New Jersey. Plaintiffs are located in Pennsylvania and Delaware, which are adjacent to New Jersey.

Transfer under 28 U.S.C. section 1404(a) is only available to districts in which the case "might have been brought" initially. 28 U.S.C. § 1404(a). Thus, the "transferee court" must have subject matter jurisdiction, venue must be proper, and defendant(s) must be subject to personal jurisdiction. The § 1404 transfer analysis therefore has two steps: (1) whether the district to which the moving party seeks to transfer meets the requirement of being one where the case "might have been brought"; and (2) if it does, would transfer serve the interest of the convenience of parties and witnesses, and the "interest of justice."

   A.   This Action Could Have Been Brought in the District of New Jersey

With respect to the first prong of the § 1404 analysis, this action could have been brought in the District of New Jersey. See 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."). Because it is where Defendants' colchicine-related activities are conducted, the District of New Jersey is the district in which "a substantial part of the events or omissions giving rise to the claim occurred." Moreover, all of the parties have sufficient contacts with the District of New Jersey to "reside" in the District of New Jersey for venue purposes. The action could therefore have been brought in the District of New Jersey.

   B.   The Interests of Convenience and Justice

In analyzing the second prong of a transfer under § 1404, the Court may consider several factors to determine whether the convenience and interest of justice elements of § 1404(a) are met by the proposed transfer: (1) convenience to the parties and witnesses; (2) relative ease of access to evidence; (3) availability of compulsory process for attendance of unwilling witnesses; (4) plaintiff's choice of forum; and (5) administrative considerations. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); E. & J. Gallo Winery v. F. & P. S.P.A., 899 F. Supp. 465 (E.D. Cal.

SEND
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

1994). The factors are each sub-categories of the three general factors listed in the text of section 1404(a) itself: the convenience of parties, the convenience of witnesses, and the interest of justice. The Court is to interpret these factors broadly, and to apply them to the particular facts of each individual case. See e.g., E. & J. Gallo Winery, 899 F. Supp. at 466. "[A] transfer is inappropriate when it merely serves to shift inconveniences from one party to the other." Kahn v. General Motors Corp., 889 F.2d 1078, 1083 (Fed. Cir. 1989); accord Decker Coal Co., 805 F.2d at 843.

    1.    Plaintiffs' Choice of Forum

Plaintiffs have made clear, not only by initially filing the Complaint in the Central District, but also in their Opposition to West-Ward's Motion, that they prefer to try this matter here in the Central District. In the Ninth Circuit, ordinarily the plaintiff's choice of forum is entitled to "substantial weight." Northern Acceptance Trust v. Gray, 423 F.2d 653, 654 (9th Cir. 1970). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co., 805 F.2d at 843. However, this is not always true:

> [P]laintiff's choice of forum . . . is not the final word. In judging the weight to be given such a choice, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection . . . the plaintiff's choice is entitled only to minimal consideration.

Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) (footnote omitted); see also Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1191 (S.D. Cal. 2007) (concluding that a plaintiff's choice is given less deference when it is not the Plaintiff's domicile).

Here, Plaintiffs have not commenced this litigation where they are domiciled. Instead, they appear to have chosen the Central District because it is near where many of their attorneys are located and because they obtained a favorable result in the Ivax matter filed in the Central District. The Court therefore concludes that Plaintiffs' choice of forum is entitled to little deference in this instance.

    2.    Convenience to the Parties

In support of the Central District's convenience, Plaintiffs rely on Watson's headquarters being located here and the fact that Defendants' counsel are located throughout the country. Neither of these arguments indicates that the Central District is a convenient forum. With the exception of Watson, all of the other remaining defendants are headquartered in New Jersey. According to Watson, the ultimate sales, marketing, and distribution decisions for its colchicine products are made by its wholly-owned

Dbtf!3;1:.dw16811.QB.S[!!!!!Epdvnfou24:!!!!!!Gjme!2102:0311:!!!!!Qbhf!!pg21

SEND
JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|

| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. |
|---|---|

subsidiary located in New Jersey. Therefore nearly all of Defendants' witnesses with relevant testimony appear to be located in New Jersey. Moreover, the location of the lawyers Plaintiffs and Defendants chose to retain is of little consequence. To hold otherwise would allow parties to manufacture inconvenience based on its selection of counsel.

New Jersey appears even to be a more convenient forum for Plaintiffs, all of which are located in Pennsylvania or Delaware, which are adjacent to New Jersey. Accordingly, this factor weighs strongly in favor of transfer.

    3.    <u>Convenience of the Witnesses</u>

Often considered the "most important factor" (especially because the conveniences to the parties most often balance), a court is required to look at who likely witnesses are, what their potential testimony will be, and why such testimony is relevant or necessary. See <u>A.J. Indus., Inc. v. United States District Court</u>, 503 F.2d 384, 389 (9th Cir. 1974).

None of the parties have specifically identified the witnesses they expect to testify, but it is clear that the vast majority of party-affiliated witnesses are located within or near New Jersey, and that New Jersey will be a far more convenient forum for them. The only witnesses who are not affiliated with a party identified by Plaintiffs are those associated with the wholesale ordering systems and third-party Price Lists. Although some of these witnesses appear to be headquartered in the Northern District of California, it is unclear who the specific witnesses might be or how their testimony might be relevant. Although the parties' failure to identify the location and importance of specific witnesses complicates the Court's analysis of this factor, the fact that nearly all of the party-affiliated witnesses are located in or near New Jersey strongly favors transfer.

    4.    <u>Location of Evidence</u>

Plaintiffs contend that with electronically stored information, the fact that most of the relevant documents are located in New Jersey does not make the Central District a less convenient forum. But as Plaintiffs admit, some of the documents are in paper format and have not yet been scanned. The Court therefore concludes that this factor weighs moderately in favor of transfer.

    5.    <u>Interests of Justice</u>

Under this factor, courts often consider such things as the relative interests of the two fora in the litigation and their familiarity with the controlling law and issues raised in the litigation. While both the Central District and District of New Jersey presumably have an equal familiarity with the controlling law under the Lanham Act, this Court does have greater familiarity with Plaintiffs' state law claims. But as Plaintiffs concede, those claims are "substantially congruent" to the Lanham Act claim.

Dbtf!3;1:.dw16811.QB.S[ !!!!!Epdvn foJ24: !!!!!Gjrhe!21Q2:Q311: !!!!!Qbhf!21!pg21

**SEND**
**JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09–5700 PA (RCx) | Date | October 19, 2009 |
|---|---|---|---|
| Title | Mut. Pharm. Co. v. Watson Pharm., Inc., et al. | | |

Cleary, 30 F.3d at 1262-63. As such, this action is likely to succeed or fail based on the Lanham Act claim, and this Court's relative familiarity with the state law claims is of less significance. The Court therefore concludes that this factor weighs only mildly in favor of declining to transfer this action to the District of New Jersey.

The Court therefore concludes that the District of New Jersey is a far more convenient forum for the witnesses and parties than is the Central District. The Court therefore transfers this action to the District of New Jersey.

### Conclusion

For all of the foregoing reasons, the Court denies Plaintiffs' Motion for Preliminary Injunction. Because the Court has determined that transfer to the District of New Jersey is warranted, the Court declines to address the issues raised in the Motion to Dismiss filed by Watson, Excellium, and Vision. Those issues should be addressed, in the first instance, by the transferee court. West-Ward's Motion to Transfer is granted. This action is transferred to the District of New Jersey for the convenience of the parties. See 28 U.S.C. § 1404(a).

IT IS SO ORDERED.