**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RECEIVED

FEB - 8 2010

AT 8:30 _____ M.
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| MUTUAL PHARMACEUTICAL COMPANY, INC.; AR SCIENTIFIC, INC.; and AR HOLDING COMPANY, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| WATSON PHARMACEUTICALS, INC.; WEST-WARD PHARMACEUTICAL CORP; GENERICS BIDCO I, LLC d/b/a QUALITEST PHARMACEUTICALS; VISION PHARMA, LLC; and EXCELLIUM PHARMACEUTICAL, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) ) |
| WEST-WARD PHARMACEUTICAL CORP. | ) ) ) |
| Counter-claimant, | ) ) ) |
| v. | ) ) |
| MUTUAL PHARMACEUTICAL COMPANY, INC., et al., | ) ) ) ) |
| Counterdefendants. | ) ) ) |

Civil Action No. 09-5421 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

This matter comes before the Court upon: (1) the motion of defendants Watson

1

Pharmaceuticals, Inc., Excellium Pharmaceutical, Inc., and Vision Pharma, LLC (collectively

"defendants" or "Watson," "Excellium," and "Vision," respectively) to dismiss plaintiffs'

complaint or, in the alternative, to dismiss the fourth cause of action and to strike allegations and

requests for damages (Doc. No. 143); (2) the motion of Mutual Pharmaceutical Company, Inc.,

AR Scientific, Inc., and AR Holding Company, Inc. (collectively "plaintiffs" of "Mutual," "AR

Scientific," and "AR Holding," respectively) to dismiss West-Ward's counterclaim, or in the

alternative, strike portions thereof and to strike West-Ward's eighteenth affirmative defense

(Doc. No. 144); and (3) the motion of defendant-counterclaimant West-Ward Pharmaceutical

Corp.'s ("West-Ward") for judgment on the pleadings[1]. (Doc. No. 196).  All three motions are

opposed.  The Court has considered the parties' submissions and decided these matters without

oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, the

Court will grant in part and deny in part Watson, Excellium, and Vision's motion, deny Mutual's

motion, and grant in part and deny in part West-Ward's motion.


I.      **BACKGROUND**

        This dispute arises from defendants' sale of colchicine, a therapeutic compound that has

been extracted and used for more than one hundred years.  Plaintiffs manufacture and sell a

colchicine product, COLCRYS, that was recently approved by the U.S. Food and Drug

Administration ("FDA").  (Compl. at ¶ 1; Doc. No. 142-2.)  Plaintiffs bring this lawsuit alleging

that defendants "manufacture and market an unapproved prescription drug that contains

---

[1] West-Ward's motion contains a short, 3-page brief that fully joins the Motion to
Dismiss of the rest of the co-defendants and makes no additional arguments specific to West-
Ward.

colchicine as the sole active ingredient and that they are unlawfully and unfairly advertising, marketing, promoting, distributing, and/or selling their unapproved colchicine products in competition with Plaintiffs' colchicine product (COLCRYS)." (*Id.*)

### A.    Facts

The following relevant facts are taken from the complaint and for the purposes of this motion must be taken as true.  Plant extracts containing colchicine have been used to treat gout for more than two thousand years, and pseudogout and Familial Mediterranean Fever ("FMF") for several decades.  (Compl. at ¶ 59; Doc. No. 142-2.)  The active pharmacological component of the plant was isolated in 1820, and in 1883 a fairly pure colchicum was extracted and subsequently called colchicine. (*Id.*)

On February 9, 2007, Mutual submitted an Investigational New Drug application ("IND") for colchicine, which eventually led to COLCRYS brand colchicine being FDA approved for treatment of FMF and for the treatment of gout on July 30, 2009.  (*Id.* at ¶¶ 3-10.)  Because the FDA also designated COLCRYS as an Orphan Drug for the treatment of FMF, Mutual was granted a 7-year exclusivity period to market COLCRYS for the treatment of FMF, ending July 29, 2016.  (*Id.* at ¶ 9.)  This exclusivity period is intended to encourage development and ensure the supply of FDA-approved drugs that combat rare diseases.  (*Id.* at ¶ 65.)  The FDA has yet to grant Orphan Drug status for COLCRYS for the treatment of gout.  (*Id.* at ¶ 11.)

It is not clear whether the defendants' colchicine product requires FDA approval.  (Defs.' Br. at 4; Doc. No. 143.)  Drugs that are generally recognized as safe and effective are referred to as "old drugs" and may be marketed without FDA approval, unlike "new drugs" which must go through an extensive review process. *See* The Drug Amendments of 1962, Pub. L. No. 87-871,

76 Stat. 780 (Oct. 10, 1962) (requiring that all new drugs must be shown by adequate studies to

be both safe and effective, and requiring FDA approval for all new drugs.); *See also* 21 U.S.C. §§

321(p)(1) and (2).  Defendants note that the "FDA has not determined that oral colchicine

requires approval." (Defs.' Reply Br. at 3; Doc. No. 189.)

Plaintiffs allege that the defendants "disseminate advertisements and product information

through several advertising channels, including Price Lists, Wholesaler Ordering Systems,

pharmacy computers and websites." (Compl. at ¶ 101; Doc. No. 142-2.)  Plaintiffs further allege

that defendants "supply misleading, obsolete, and/or incomplete information" about their

unapproved colchicine products to the Price Lists, Wholesaler Ordering Systems, and other

advertising channels.  (*Id.* at ¶ 109.)  Plaintiffs state that "pharmacists and buyers believe that all

prescribed drugs identified on the Price Lists and the Wholesaler Ordering Systems are safe,

effective and FDA-approved" and therefore "by listing their unapproved . . . colchicine products

on the Price Lists, Wholesaler Ordering Systems, and other advertising channels, Defendants

knowingly and willfully communicate to relevant consumers that their products are safe,

effective and FDA-approved."  (*Id.* at ¶¶ 114,115.)

## B.    Procedural History

Plaintiffs commenced this action on August 4, 2009, by filing a complaint in the Central

District of California. (Cal. Doc. No. 1.[2]) On October 19, 2009, the action was transferred to the

District of New Jersey.  (Cal. Doc. No. 139.)  On September 9, 2009, defendant West-Ward filed

_____

[2] Because this case was transferred, certain docket notations do not appear on the District
of New Jersey Docket (No. 09-5421).  Documents that are only available on the Central District
of California docket (No. 09-5700) will be referenced by "Cal. Doc. No." while documents
available on the District of New Jersey docket will be referenced as "Doc. No." If documents are
available on both dockets, the D.N.J. docket number will be used.

a counterclaim. (Cal. Doc. No. 41.)  On September 23, 2009, defendants Watson, Excellium, and Vision filed a motion to dismiss the plaintiffs' complaint, or in the alternative, to dismiss the fourth cause of action and to strike allegations and requests for damages. (Cal. Doc. No. 75; Doc. No. 143.)  On October 9, 2009, plaintiffs filed a motion to dismiss (1) West-Ward's counterclaim, or in the alternative, to strike portions thereof, and (2) to strike West-Ward's eighteenth affirmative defense. (Cal. Doc. No. 120; Doc. No. 144.)  On December 10, 2009, defendant West-Ward filed a motion for judgment on the pleadings. (Doc. No. 196.)  All three motions are opposed.  All matters were fully briefed on December 28, 2009.

Plaintiffs' four-count complaint alleges: (1) false advertising or misleading representation of fact and unfair competition under 15 U.S.C. § 1125(a) [The Lanham Act]; (2) statutory unfair competition under California Business and Professions Code § 17200; (3) statutory false advertising under California Business and Professions Code § 17500; and (4) common law unfair competition. (Doc. No. 142-2.)  Defendant West-Ward counterclaimed alleging tortious interference with contractual relations. (Doc. No. 142-4.)

## II.    DISCUSSION

Defendants filed a motion to dismiss plaintiffs' complaint, arguing that plaintiffs' claims are within the FDA's primary jurisdiction and amount to an impermissible private right of action under the Food, Drug, and Cosmetic Act ("FDCA"). (Defs.' Br. at 9; Doc. No. 143.) Defendants also move to dismiss plaintiffs' fourth cause of action - for a violation of California unfair competition law - because California law only allows an unfair competition claim in the context of "passing off" the goods of the defendant as those of the plaintiff. (*Id.* at 17.)  In addition, Defendants move to strike plaintiffs' claim for damages under Sections 17200 and 17500 of the

California Business and Professions Code because private individuals may not recover damages under those statutes. (*Id.* at 18.) Finally, defendants move to strike plaintiffs' claims that allege a violation of the "unfair" prong of section 17200, because plaintiffs are required to plead an act that would be a violation of antitrust law. (*Id.* at 20.)

Plaintiffs filed a motion to dismiss West-Ward's counterclaim for intentional interference with contractual relations, in which they argue that West-Ward does not identify a specific third party or contract with which Mutual interfered, nor does West-Ward allege Mutual's knowledge of any of West-Ward's contracts, two necessary elements under California law. (Pls.' Br. at 3; Doc. No. 144.) Plaintiffs further move to strike allegedly irrelevant and inflammatory claims disparaging Mutual's manufacturing practices. (*Id.* at 8.) Finally, plaintiffs move to strike West-Ward's eighteenth affirmative defense from its answer, because there is no precedent for a defense of "behavior antithetical to acceptable commercial practice," and because it is redundant to the fourth affirmative defense of unclean hands. (*Id.* at 9.)

### A.     Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to

6

draw the reasonable inference that the defendant is liable for the misconduct alleged" and

demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing

*Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a

complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

(quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231

(3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint,

exhibits attached to the complaint, matters of public record, and undisputedly authentic

documents if the complainant's claims are based upon those documents. *See Pension Benefit

Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.     Application**

**1.     Defendants' Motions to Dismiss**

Defendants filed a motion to dismiss plaintiffs' complaint, arguing that plaintiffs' claims

are within the FDA's primary jurisdiction and amount to an impermissible private right of action

under the Food, Drug, and Cosmetic Act. (Defs.' Br. at 9; Doc. No. 143.) Defendants also move

to dismiss plaintiffs' fourth cause of action - for a violation of California unfair competition law -

because California law only allows an unfair competition claim in the context of "passing off"

the goods of the defendant as those of the plaintiff.[3] (*Id.* at 17.) In addition, Defendants move to

---

[3] In their various submissions, the parties do not appear to dispute that California law
applies to the California state law claims. It appears, however, that a choice of law issue may
apply to West-Ward's counterclaim. In Part II below, the Court concludes that a choice of law
analysis is premature at this stage of this case. As such, for the purposes of the instant Rule 12
analysis of the California state law claims expressly pled and briefed under California law, the
Court will assume *arguendo* that California law controls those claims.

7

strike plaintiffs' claim for damages under Sections 17200 and 17500 of the California Business

and Professions Code because private individuals may not recover damages under those statutes.

(*Id.* at 18.)  Finally, defendants move to strike plaintiffs' claims that allege a violation of the

"unfair" prong of section 17200, because plaintiffs are required to plead an act that would be a

violation of antitrust law.  (*Id.* at 20.)

a.      *The Primary Jurisdiction Doctrine*

Defendants argue that plaintiffs' claims should be dismissed because they are within the

FDA's primary jurisdiction, and because plaintiffs impermissibly attempt to redress violations of

the FDCA, under which no private right of action exists.  (Defs.' Br. at 9; Doc. No. 143.)  The

FDCA provides that "all such proceedings for the enforcement, or to restrain violations of [the

FDCA] shall be by and in the name of the United States."  21 U.S.C. § 337(a).

Plaintiffs do not bring their claims under the FDCA.  Plaintiffs allege that defendants'

marketing of their unapproved colchicine product improperly implied FDA approval where none

exists, and seeks redress by using the Lanham Act, which provides a federal cause of action for

unfair competition.  *See AT&T v. Winback and Conserve Program*, 42 F.d 1421, 1428 (3d Cir.

1994).  Thus, defendants contend that plaintiffs are attempting to use the Lanham Act to stop

defendants from selling colchicine, which is an impermissible "end run around the regulatory

process."  (Defs.' Br. at 2; Doc. No. 143.)

Primary jurisdiction "applies where a claim . . . requires resolution of issues which . . .

have been placed within the special competence of an administrative body."  *MCI*

*Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995).  It is "not

appropriate for a court in a Lanham Act case to determine preemptively how a federal

8

administrative agency will interpret and enforce its own regulations." *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990).

Defendants argue that here, as in *Sandoz*, plaintiffs "ask the Court to decide issues that the FDA has not yet resolved." (Defs.' Sur-Reply at 2; Doc. No. 197.)  Defendants assert that plaintiffs' claims "require this Court to determine (a) whether defendants' products are lawfully on the market; (b) whether defendants' products should be removed from the market immediately . . . and (c) whether [the] FDA's approval of plaintiffs' colchicine label somehow imposes specific FDA labeling obligations on defendants' products."  (*Id.*)

Plaintiffs counter by arguing that the Court "need not interpret any FDA regulations or speculate as to how the FDA might opine on the approval of plaintiffs' . . . product because the FDA has made a final determination on the issue." (Pls.' Sur-Reply at 1; Doc. No. 199.) Plaintiffs further argue that whether Defendants' colchicine products require FDA approval "is irrelevant to Plaintiffs' claims, as Plaintiffs' complaint focuses on Defendants' affirmative misrepresentations that their products *are* FDA approved."  (*Id.* at 2)(emphasis in original).

Defendants argue in their reply that the FDA has never made a determination whether their colchicine product needs to be approved, and also note that this case targets every conventional industry channel for marketing drugs in the United States, which would effectively remove their products from the market.  (Defs.' Reply Br. at 1; Doc. No. 189.)

The Third Circuit has stated that "what the FD&C Act . . . [does] not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of [the Act] or [its] accompanying regulations." *Sandoz*, 902 F.2d at 231.  District courts around the country have split on whether determining the falsity of product labeling falls within the

9

realm of the FDA. *See Mutual Pharmaceutical Company, Inc. v. Ivax Pharmaceutical, Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) ("[The FDCA] is not focused on the truth or falsity of advertising claims, but is instead directed to protecting the public by ensuring that drugs sold in the marketplace are safe, effective and not misbranded, a task vested in the FDA to implement and enforce."); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 470 (D.N.J. 2009) ("[T]he Court here is not speculating as to how the FDA might opine since the FDA has [already] flagged its views . . . here the Court is not seeking to usurp the FDA's authority or preempt its findings in an ongoing investigation."). *But see Eli Lilly and Company v. Roussel Corp.*, 23 F. Supp. 2d 460, 477 (D.N.J. 1998) ("[Plaintiff's false advertising] claims under the Lanham Act, in essence, seek redress for violations of the FDCA.")

Here, the complaint alleges that defendants affirmatively misrepresented the FDA approval status of their products and also made false and misleading representations on their product inserts and labels. (Compl. at ¶¶ 98, 109, 125; Doc. No. 142-2.)  Whether these statements are false and misleading to relevant consumers is not a matter reserved for the FDA, but a matter that falls within the jurisdiction of this Court.  Though plaintiffs' complaint repeatedly refers to defendants' products as "illegal"[4] and includes citations to the FDCA, it also seeks a narrow form of relief: the cessation of alleged false advertising that implies FDA approval of defendants' products which are not FDA approved. *Eli Lilly* noted that "[t]he Third Circuit has not addressed whether placing a drug in the market constitutes an implicit representation that the FDA properly approved it." *Eli Lilly*, 23 F. Supp. 2d at 477.  Here,

---

[4] The Court notes that these are legal conclusions and are not entitled to the Court's acceptance. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

plaintiffs' complaint is sufficiently detailed to state that the presence of defendants' product on

price lists and at drug wholesalers creates confusion among consumers in violation of the

Lanham Act. (Compl. at ¶¶ 110-116; Doc. No. 142-2.)  Further, plaintiffs' complaint states that

"[s]urvey evidence demonstrates the inaccurate perception of relevant consumers that pharmacy

computer systems . . . perform a gatekeeper function by displaying only those drug products that

have been approved by the FDA." (*Id.* at ¶ 113.)   The resolution of plaintiffs' Lanham Act

claims do not depend on any rule or regulation of the FDA, but rather whether defendants'

products misleadingly imply FDA approval.  For this reason, the portion of defendants' motion to

dismiss that rests on the primary jurisdiction doctrine will be denied.

> b.    *Plaintiffs' Fourth Cause of Action*

Defendants next move to dismiss the plaintiffs' fourth cause of action for a violation of

California unfair competition law. (Defs.' Br. at 17; Doc. No. 143.)  Defendants argue that

unfair competition under California common law only applies when the plaintiff alleges a

"passing off"[5] situation. (*Id.*)   Plaintiffs argue that California common law unfair competition is

broader, and congruent to claims made under the Lanham Act. (Pls.' Br. at 14; Doc. No. 188.)

The California Supreme Court has held that "the common law tort of unfair competition

is generally thought to be synonymous with the act of 'passing off' one's goods as those of

another." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992).   Further, the court

stated that "statutory unfair competition extends to all unfair and deceptive trade practices. . . .

The statutory definition of unfair competition cannot be equated with the common law

---

[5] "Passing off" occurs when the defendant makes it seem as though his own goods are the
goods of the plaintiff. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1
(2003).

definition." *Id.* (internal quotations omitted).  The Ninth Circuit has also weighed in on the

issue, citing *Bank of the West* to dismiss an unfair competition claim because no passing off was

alleged.  *Sybersound Records v. UAV Corporation*, 517 F.3d 1137, 1153 (9th Cir. 2008)

("Sybersound has not alleged that the [defendants] have passed off their goods as those of

another nor that they exploit trade names or trademarks and, thus, has not stated a common law

unfair competition claim.")  Plaintiffs cite federal authority for the proposition that common law

claims for unfair competition are congruent to claims made under the Lanham Act, but all of this

authority pre-dates the Ninth Circuit's opinion in *Sybersound*.

      The Court agrees with the defendants that, under California precedent in *Bank of the*

*West*, California common law unfair competition only applies to instances where passing off is

alleged.  Because no passing off is alleged in plaintiffs' complaint, defendants' motion to dismiss

the Fourth Cause of Action will be granted.

*c.*     *Defendants' Motions to Strike*

      Defendants also move to strike portions of plaintiffs' complaint.  Defendants argue that:

(1) plaintiffs' claim for damages under Sections 17200 and 17500 of the California Business and

Professions Code should be stricken because damages are not available remedies under those

statutes; and (2) plaintiffs' allegations under the "unfair" prong of Section 17200 of the

California Business and Professions code should be stricken because plaintiff cannot allege an

antitrust violation. (Defs.' Br. at 18; Doc. No. 143.)

*1.*     *Plaintiffs' Prayer for Relief*

      Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

12

matter." FED. R. CIV. P. 12(f).  Defendants argue that the prayer for relief should be stricken because private plaintiffs cannot receive damages under these sections.  *See Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1144 (2003) ("damages cannot be recovered" under section 17200.)  *See also Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976) (section 17500, *et seq.*, "do[es] not authorize recovery of damages by private individuals.")

Plaintiffs argue that they are not asking for damages as prohibited by the statute, but are instead asking for compensation in the form of restitution, which is authorized by the California Business and Profession code.  (Pls.' Opp. at 16; Doc. No. 188.)  Section 17203 authorizes courts to make such orders as "may be necessary to restore any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203 (2009).  Plaintiffs' prayer for relief requests that "plaintiffs be awarded damages in an amount sufficient to compensate for the damage caused by Defendants' unfair competition and false advertising . . ." (Pls.' Opp. at 16; Doc. No. 188.)

The Court concludes that plaintiffs' prayer for relief adequately seeks restitution, and not compensatory damages and/or exemplary damages, which are clearly not available remedies under the applicable statutes.  Therefore, the defendants' motion to strike the prayer for relief will be denied.

### 2.       *Unfair Competition Allegations*

Defendants also move to strike plaintiffs' unfair competition claim under section 17200 of the California Business and Professions code, arguing that plaintiff is required to plead an antitrust violation to sustain a claim under this section.  (Defs.' Br. at 20; Doc. No. 143.) Plaintiffs argue that the definition of "unfair" used by defendants is inapplicable, because it only

applies to unfair business practices and not false or misleading advertising. (Pls.' Opp. at 17-18; Doc. No. 188.)

Section 17200 is violated when a defendants' act or practice is: "(1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false of misleading advertisements)." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). "Each prong of the UCL [Unfair Competition Law] is a separate and distinct theory of liability." *Id.* The California Supreme Court has held that "the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or that violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition." *Cel-Tech Cmmc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal 4th 163, 187 (1979). The Ninth Circuit has also weighed in, noting that "[plaintiff] has not pled an act that would be an incipient violation of antitrust law, as required under *Cel-Tech* for claims against competitors." *Sybersound*, 517 F.3d at 1153.

Plaintiffs' action is based on false advertising. There is no mention of an antitrust violation in the complaint. Therefore, the portions of the complaint alleging a violation of the "unfair" prong of section 17200 will be stricken.[6]

### 2.     Plaintiffs' Motion to Dismiss

Plaintiffs filed a motion to dismiss West-Ward's counterclaim for intentional interference with contractual relations, in which they argue that West-Ward does not identify a specific third party or contract with which Mutual interfered, nor does West-Ward allege Mutual's knowledge

---

[6] The Court notes that only the portions of the complaint alleging violations of the "unfair" prong of Section 17200 will be stricken. *Lozano* makes it clear that Section 17200 can still be violated by false or misleading advertisements under Section 17500.

of any of West-Ward's contracts, two necessary elements under California law. (Pls.' Br. at 3; Doc. No. 144.) Plaintiffs further move to strike allegedly irrelevant and inflammatory claims disparaging Mutual's manufacturing practices. (*Id.* at 8.)  Finally, plaintiffs move to strike West-Ward's eighteenth affirmative defense from its answer, because there is no precedent for a defense of "behavior antithetical to acceptable commercial practice," and because it is redundant to the fourth affirmative defense of unclean hands. (*Id.* at 9.)

a.    *Intentional Interference with Contractual Relations*

Plaintiffs move to dismiss West-Ward's counterclaim for interference with contractual relations. (Pls.' Br. at 3; Doc. No. 144.)  In order to state a claim for intentional interference with contractual relations under California law, the claimant must plead: "(1) a valid contract between [claimant] and a third party; (2) [counter]defendant's knowledge of this contract; (3) [counter]defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citing *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal. 3d 752, 765-766 (1984)); *See also Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008).  Plaintiffs argue that West-Ward failed to plead the first, second, and fourth elements of this cause of action and therefore the claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

After the case was transferred to this Court, neither party sought leave to file sur-replies to update their briefs on relevant New Jersey law related to this motion, nor do the parties dispute whether New Jersey or California law applies to the counterclaim.  New Jersey law differs from

15

California law with respect to interference with contractual relations, with New Jersey requiring

"(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a

[counter]defendant who is not a party to the contract; (3) that the interference was without

justification; and (4) that the interference caused damage." *Dello Russo v. Nagel*, 358 N.J. Super.

254, 268 (App. Div. 2003).

A federal district court must apply the choice of law rules of its forum state to determine

what law will govern the substantive issues of a case. *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313

U.S. 487, 496 (1941).   When deciding choice of law questions, New Jersey courts apply the

flexible two-step "government interest analysis". *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615,

621 (N.J. 2007).   The United States Court of Appeals for the Third Circuit has noted that New

Jersey's governmental interest analysis "is fact intensive: 'Each choice-of-law case presents its

own unique combination of facts -- the parties' residence, the place and type of occurrence and

the specific set of governmental interest -- that influence the resolution of the choice-of-law issue

presented.'" *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) (quoting *Erny v. Estate of

Merola*, 171 N.J. 86, 108 (2002).   Because the governmental interest analysis is fact intensive, it

can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss

stage when little or no discovery has taken place. *Harper v. LG Elecs. United States, Inc.*, 595 F.

Supp. 2d 486, 490-91 (D.N.J. 2009).   This case presents that situation.

The Court concludes that a choice of law analysis is inappropriate at this time, and thus

plaintiffs' motion to dismiss defendant West-Ward's counterclaim will be denied without

prejudice because it is unclear whether New Jersey or California law applies to this portion of the

counterclaim, and New Jersey and California law are materially different.

> b.   *Plaintiffs' Motions to Strike*

Plaintiffs also move to strike certain allegations from West-Ward's counterclaim, as well as to strike West-Ward's eighteenth affirmative defense.  The allegations of the counterclaim that plaintiffs find objectionable state that "(1) Mutual is aware that its product is not a legitimate substitute for West-Ward's product; (2) Mutual's product is manufactured in material disregard of industry standard good manufacturing practices and requirements; (3) the facility used to produce Mutual's tablets is not compliant with FDA requirements and has never been inspected by the FDA; and (4) Mutual's supply facility was cited for violations by French health authorities in a recent inspection." (West-Ward's Opp. at 1; Doc. No. 145 (citing Countercl. at ¶¶ 13, 14; Doc. No. 142-4.))  West-Ward states that this information is material to its counterclaim for tortious interference with contractual relations because Mutual knew of the inferior quality of their colchicine tablets, but "inform[ed] consumers that its product can and should be purchased and dispensed instead of West-Ward's," thus interfering with West-Ward's contracts with various purchasers of colchicine.  (*Id.* at 10.)  The Court concludes that these allegations are linked to the counterclaim, and do not confuse the issues at this stage of the litigation.  For these reasons, plaintiffs' motion to strike paragraphs 13 and 14 of West-Ward's counterclaim will be denied.

Finally, plaintiffs move to strike West-Ward's eighteenth affirmative defense of "behavior antithetical to acceptable commercial practice," stating that they have found "no precedent" for this defense and further arguing that this affirmative defense is redundant to the fourth affirmative defense of "unclean hands." (Pls.' Br. at 9; Doc. No. 144.)  West-Ward counters by arguing that the premise of the eighteenth affirmative defense is that "an injunction

17

should not lie where the public interest would be adversely affected by such relief." (West-Ward's Br. at 12; Doc. No. 145.)  West-Ward also argues that facts regarding the quality of Mutual's colchicine tablets, its manufacturing process, and Mutual's attempt to monopolize the colchicine market are relevant to this defense. *Id.* The Court agrees.  Plaintiffs' motion to strike West-Ward's eighteenth affirmative defense of "behavior antithetical to acceptable commercial practice" will be denied.

## III.   CONCLUSION

For the foregoing reasons, Defendant Watson, Excellium, and Vision's motion to dismiss or in the alternative to dismiss the fourth cause of action and to strike allegations and requests for damages (Doc. No. 143) will be granted and part and denied in part; defendant West-Ward's motion for judgment on the pleadings (Doc. No. 196) will be granted and part and denied in part; and plaintiffs' motion to dismiss West-Ward's counterclaim or to strike portions thereof and to Strike West-Ward's eighteenth affirmative defense (Doc. No. 144) will be denied.  An appropriate form of order is filed herewith.

Dated: *February 8* , 2010

GARRETT E. BROWN, JR., U.S.D.J.

18