```
                       UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW JERSEY - TRENTON


    -----------------------------
    MUTUAL PHARMACEUTICAL          :
    COMPANY, INC., et. al.,        :
                                   :
            Plaintiff,             :   DOCKET NO.  CU-09-5421
                                   :
        vs.                        :   TRENTON, NJ
                                   :
    WATSON PHARMACEUTICALS,        :   July 14, 2010
    INC., et. al.,                 :
                                   :
            Defendant.             :
                                   :
    -----------------------------



            TRANSCRIPT OF CONFERENCE CALL HEARD BEFORE
            HONORABLE TONIANNE J. BONGIOVANNI, U.S.M.J.



    TRANSCRIPT ORDERED BY:

        DAMIAN P. CONFORTI, ESQ.
        Podvey, Meanor, Catennaciti, Hildner, Cocoziello
        & Chattman, PC
        The Legal Center
        One Riverfront Plaza, 8th Floor
        Newark, New Jersey 07102


    A P P E A R A N C E S:

        (On next page)








                    AudioEdge Transcription, L.L.C.
                       425 Eagle Rock Avenue
                     Roseland, New Jersey  07068
                          (973) 618-2310
                    www.audioedgetranscription.com
```

APPEARANCES:

    GREG MILLER, ESQ. (Podvey, Meanor, Catennaciti,
    Hildner, Cocoziello & Chattman, PC)
    NISHAN KOTTAHACHCHI, ESQ.
    Attorneys for Plaintiff

    DAVID NOVACK, ESQ. (Budd Larner)
    Attorney for defendant Excellium

    JARED LINA, ESQ.
    KAREN BRAGMAN, ESQ.
    MICHAEL DORE ESQ.
    CLARK SULLIVAN, ESQ.
    Attorneys for defendant West-Ward

    ROBERT SCHOENBERG, ESQ.
    WYVAL MARCUS, ESQ.
    CAMERON REABER, ESQ.
    Attorneys for defendant Vision

1         THE COURT:  Good morning.  How are you, folks?

2         UNIDENTIFIED SPEAKER:  Good morning.

3         UNIDENTIFIED SPEAKER:  Good morning, Judge.

4         UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

5         THE COURT:  And we're on the record to discuss the
6    outstanding discovery issues that I have in the letters lined
7    up for me beginning June 17th.  Let me ask you if you had any
8    conversation and if there's been any resolution of any of these
9    issues or if I should just go through each of the
10   interrogatories that were raised in the June 17th letter?

11        MR. NOVACK:  Judge, this is David Novack from Budd
12   Larner for Excellium.  And we're, I guess, the target of that
13   letter.  We have not had a further discussion with our
14   adversary.  However, we continue to make progress on reviewing
15   and producing documents.  We have retained, or re-retained I
16   should say, accompany to copy and review our electronic
17   documents.  We have more hard copy documents to produce and
18   we're making progress.

19        THE COURT:  Okay.  What is the targeted date for when
20   you'll be complete with your disclosures, do you know?

21        MR. NOVACK:  I don't know.  The -- there was a
22   problem in copying -- originally in copying one of the hard
23   drives due a power failure at the facility.  That's being
24   redone.  And after they have that hard drive, we should have a
25   better idea as to the scope of the project of reviewing the

```
 1    documents to mark confidential, privileged and relevant

 2    documents.  The hard copies that we have should be ready to

 3    produce by the beginning of next week.

 4              THE COURT:  Okay.  All right.  Anything from

 5    plaintiffs before we go through this?

 6              MR. MILLER:  Your Honor, this is Greg Miller.  I'll

 7    let Nishan Kottahachchi take most of this.  But the one

 8    question I have and issue I want to raise is, with respect to

 9    Excellium now indicating that it's going to be producing

10    documents.  It's still unclear to us whether those documents

11    and other information are responsive to what they term to be

12    non-objectionable requests or whether or not they've changed

13    their position with respect to the issues laid out in our

14    letters to you.  So I think we need some clarification there to

15    understand where everything --

16              THE COURT:  Okay.  Well, I think that's where I can

17    help regardless of what Mr. Novack's client's position is.  I

18    did go through each of the items that is contained in -- are

19    contained in the June 17th letter.  And painting with a broad

20    brush, it's clear from reading the complaint that the

21    allegations here are all focused on the advertising, marketing

22    and promotion of this product.  So anything that is in any of

23    the defendant's control that relates to the marketing of the

24    product.  And I think document request Number 38 just talks

25    also about safety, ethicacy, substitutability and FDA approval
```

1   status.  I mean, that's obviously what the plaintiff's main
2   concern is.  But any of that type of information that's in any
3   documents that are within the defendant's control or generated
4   by the defendant, whether it's labeling material, whether it's
5   correspondence that discusses how to market this material,
6   whether it's correspondence that talks about a relationship
7   with anyone else in terms of advertising.  For example, those
8   other parties that are mentioned.  I guess the wholesaler,
9   ordering system folks, any of that type of information should
10  be produced.  So I would narrow, for example, document request
11  Number 14 where it asks for communication with these
12  wholesalers to simply -- any communications with wholesalers
13  that relate to the marketing of the product.  And, for example,
14  if it talks about safety, ethicacy, the substitutability and
15  the FDA approval status.  That's, again, me painting with a
16  broad brush.
17              Going through all of these, I would tell you that the
18  only limitations I would really put on any of these would be,
19  as I said, Number 14, that it just needs to be narrowed to talk
20  about marketing.  I don't see the -- I don't see the relevance
21  of the information that you're seeking regarding medicaid and
22  medicare unless, again, we're talking about in your
23  communication with any of those government insurance programs
24  if there is information in those communications that relates to
25  the marketing of the product.

1		Stepping back to Number 27 for a minute.  I guess to
2	the extent that the corporate structure is an issue, it seems
3	to me that in your responses -- in defendant's responses to
4	Rule -- in your Rule 26 disclosures and in your responses you
5	should be identifying anyone who is involved in the marketing
6	advertising.  So while that's listed as a document request, if
7	it isn't covered in an interrogatory, I would suggest that you
8	answer that specifically and that would alleviate your having
9	to produce the whole corporate structure.  And the only other
10	question I really had was Number 17.  Was there an agreement as
11	to the time period?
12		UNIDENTIFIED SPEAKER:  Judge, there's -- I think that
13	there was.  And there's some tension there because of what's
14	really relevant in this case.  You know, we're going back
15	through -- we're not a big company, we're not computerized,
16	we're going through hard copy documents.  Frankly, we've come
17	to a negotiation but we frankly just still don't understand
18	what relevance any of our advertising had prior to the July 30,
19	2009 approval date.  You know, maybe that's just my inability
20	to understand the plaintiff's case.
21		MR. KOTTAHACHCHI:  Your Honor, this is Nishan
22	Kottahachchi for the plaintiffs.  As counsel for Excellium
23	noted, there was an agreement as a result of two confirmed
24	meetings that resulted in the July 29, 2006 time limitation.
25	The reason that date is relevant is that's three years before

1     the date of approval of plaintiff's product.  We used three
2     years of the date to go back because a lot of the information
3     that was provided to the price list and wholesalers, it's our
4     understanding, was done before that date.  Before the FDA
5     approval.  And in order to find out what was said about these
6     products, which eventually got onto the price list and
7     wholesale ordering systems, we need to go back some date before
8     2006.  We thought three years was reasonable.  We initially
9     went with five years date, but then -- five years before but
10    then initially withdrew it to three years.  We think that's a
11    reasonable time limitation and is necessary to find out -- get
12    the documents and the information that is at the heart of this
13    litigation.
14              THE COURT:  Well, Mr. Novack, I don't want to touch
15    an agreement if you had one.
16              MR. NOVACK:  Judge, I would concede that -- what
17    Nishan said is accurate.  And, you know, we're working on it.
18              THE COURT:  Okay.
19              MR. NOVACK:  We're basically doing a page by page
20    review of the client's documents.  Frankly searching for a
21    needle in the haystack because while -- you know, from an
22    objective point of view one would think that there was
23    significant correspondence regarding this drug with these
24    selling procedures.  There isn't.
25              THE COURT:  Well, I understand from your papers that

1    it sounded to me anyway that your client does not market in a

2    way that you are, I guess, the stereotypical view of marketing.

3    That you have these price lists and that you go to trade shows

4    but with the price list and you're not doing an out and out

5    advertisement campaign.  That's what it sounded like to me from

6    your papers.

7                MR. NOVACK:  Judge, I don't want to be a witness in

8    this case, but I have been involved in this industry for quite

9    some time.  And the way that people in my client's situation,

10   basically the generic drug industry, they sell based on price

11   only.  They don't advertise, they don't promote their products

12   as you suggested in the traditional marketing campaign.  They

13   don't do those -- they don't participate in those kinds of

14   activities.

15               THE COURT:  Is most of the material --

16               MR. NOVACK:  We're not looking for, you know, an

17   advertising campaign with our marketing agents or anything like

18   that.  Those documents don't exist.

19               THE COURT:  Is most of the information that you're

20   searching through, Mr. Novack, on a computer where you can do

21   term searches?

22               MR. NOVACK:  Well, that's -- that is the information.

23   Some of it is, some of it is hard documents.  The information

24   that I indicated earlier that were getting copied off of the

25   various hard drives at the company, that will be put into a

1      searchable format.

2              THE COURT:  Okay.

3              MR. NOVACK:  And so that we would expect to identify
4      communications with the price list and wholesalers.  And we'll
5      be producing that.

6              THE COURT:  Okay.

7              MR. NOVACK:  Such as it is.

8              THE COURT:  All right.  So is there any question
9      about where I'm going with all of these -- the issues that
10     you've raised?  Again, I know I have spoken by painting with a
11     broad brush, but I think that what I've stated could be applied
12     to each of these fairly easily with the caveats or
13     clarifications or limitations that I mentioned as to those
14     specific items.  Does that work for everyone?

15             MR. NOVACK:  I think it does work for us, Judge.

16             THE COURT:  Okay.

17             MR. NOVACK:  Novack again.

18             THE COURT:  And what I'd like to do is, and I don't
19     mean to torture you folks, but I'm trying to balance, keeping
20     you moving, but also recognizing that there is some problem
21     that the defendants are having in their document production.
22     So what I'd like to get, in particular from you, Mr. Novack, is
23     an update as to where we are with the production of all of
24     these items by mid-August.  And then I can, perhaps in less of
25     a vacuum, address the schedule issue that we have.  I know we

1   have an end date in September for fact discovery.  That there's
2   been a request to extend that by 60 to 90 days.  The plaintiffs
3   somewhat reluctantly have agreed that they understand that
4   perhaps a 60 day extension might be necessary.  But I somewhat
5   like to hold everyone's feet to the fire and get an update on
6   documentation production the middle of next month.  And then I
7   can go from there and perhaps give an extension based on what I
8   see or address any additional problems with the delay so that
9   hopefully the next extension I give is the last.  And you folks
10  are certainly free to start scheduling depositions in September
11  if you'd like knowing -- you know, September, October, November
12  knowing that I will give you at least the 60 days that sounds
13  reasonable.  But I don't want to be in a position where we all
14  put this on the back burner because we now have a little bit of
15  breathing room.  So again, coming full circle, if I can just
16  get an update whether it's a joint letter, whether it's easier
17  just for everyone to send me an individual letter saying this
18  is where we are and we think, in light of where we are, that
19  the 60 days would be ample time to wrap everything up.  And if
20  I can have that letter by August 20th, that would be great.
21              UNIDENTIFIED SPEAKER:  Okay.
22              THE COURT:  Okay?  So we have an understanding that I
23  will be giving you an extension in the discovery schedule, I'm
24  just not entering it yet because I want to take your pulse on
25  all of this and make sure that what we do next makes perfect

1  sense.  And also if I have to get your attention before the

2  summer's over then I can get you folks back on the phone and

3  perhaps nudge someone not so gently.  Good?

4           MS. BRAGMAN:  Your Honor, Karen Bragman on behalf of

5  defendant West-Ward.  I have one question about the scheduling

6  order.

7           THE COURT:  Sure.

8           MS. BRAGMAN:  That is, can we assume that all of the

9  other dates --

10          THE COURT:  Oh, yes.

11          MS. BRAGMAN:  -- the critical dates in the scheduling

12 order would be moved with the same amount of time?

13          THE COURT:  Yes.  Yes.  You can assume that.

14          MS. BRAGMAN:  Very good.  Whatever the extension is,

15 the other dates would move accordingly?

16          THE COURT:  Yes.  That's right.  Okay.

17          MR. KOTTAHACHCHI:  Your Honor, this is Nishan

18 Kottahachchi for the plaintiff.  Generally what you said in

19 terms of the broad strokes the discovery is acceptable to the

20 plaintiffs.  You know, we would ask that the mid-August update

21 is also fine with the plaintiffs, you know, given that the

22 discovery requests were served in October of 2009.  We would

23 hope that the production would be made in another month.  If

24 that's not possible, for technical reasons, of course we

25 understand.  The one issue that was left outstanding here is

```
 1      the interrogatory responses.  Numbers 5, 6 and 11.  That, we
 2      believe, could be answered well before mid-August.  And we'd
 3      hope that would be done so.
 4              THE COURT:  Okay.  Let me just --
 5              MR. NOVACK:  This is Mr. Novack again.  We certainly
 6      don't expect to wait until mid-August to drop all of our
 7      discovery responses on the plaintiff.  As soon as they're
 8      ready, we'll serve them.
 9              THE COURT:  Okay.  That would be perfect.  To the
10      extent you have to --
11              MR. NOVACK:  To do that with the documents.
12              THE COURT:  And to the extent, Mr. Novack, that --
13      for some reason you need to review documents before you get
14      your responses out, I just suggest you do the answers even if
15      it's on a rolling production basis.  While it might not be the
16      most efficient it would hopefully keep the progress moving and
17      the plaintiff satisfied as well that they're getting this
18      information as you have it.
19              MR. NOVACK:  Absolutely, Judge.
20              THE COURT:  All right.
21              MR. NOVACK:  We will following that instruction.
22              THE COURT:  Okay.  The last thing, and I don't know
23      if it will come up for any of you, but if you do have a
24      situation where you don't have certain material, and this is
25      all you have, if you can just get a certification to that
```

1    extent as well then that often alleviates folks having to come
2    to me.  And I know the receiving party is often a little leery
3    of getting a note or a letter that simply says this is all we
4    have.  And if you can just do a certification to that extent,
5    it doesn't exist, we don't do this, it's not our practice or,
6    you know, these are all the documents that we have relating to
7    this then hand over the certification at the same time and
8    hopefully you won't have to engage in a writing campaign then.
9              MR. NOVACK:  Okay.
10             THE COURT:  Okay.  So we're going to be a little bit
11   fluid after -- my game plan is that after I get this August
12   20th submission that I can hopefully pretty quickly either get
13   you folks on the phone if there's something to talk about, or
14   simply enter a schedule extending the dates and I will plug in
15   a telephone conference along the way.  And generally I do that
16   before fact discovery is set to close so I can make sure that
17   we don't have any loose ends.  So that's sort of the method to
18   my madness.  And if you folks have a suggestion for something
19   different along the way, let me know.  I know that these cases
20   are often difficult to settle, but if sometime between now and
21   when we're next scheduled to speak someone wants to raise the
22   idea of coming in and sitting around the table with me, going
23   to a mediator, I am open to any suggestions.  And just because
24   I'm not constantly raising it doesn't mean that I wouldn't
25   entertain any suggestion that might get you to go away.

```
 1                MR. MILLER:  Your Honor, this is Greg Miller on
 2     behalf of plaintiff.  Just one last question.
 3                THE COURT:  Sure.
 4                MR. MILLER:  Does the Court have a preference as to
 5     whether what we've discussed today should be memorialized in an
 6     order or is that something that the Court doesn't deem --
 7                THE COURT:  Well, I actually am on the record.  And I
 8     sort of mentioned that at the beginning, so I sort of figured
 9     we have this as a record of --
10                MR. MILLER:  Okay.
11                THE COURT:  -- and then this way no one has to go
12     through the process of memorializing it officially.  So if you
13     need a copy of this, you can certainly ask for the transcript
14     or if you want to wait to see if we have any issues down the
15     line we can always get it at that point.  Good?
16                MR. MILLER:  That sounds fine.  Thank you.
17                THE COURT:  Okay.  All right, folks.  Well, enjoy the
18     rest of the summer.  Hopefully I won't have to talk to you and
19     that the production will go smoothly and I can just plug in a
20     conference call for us in early fall.  But if you need me, you
21     know how to get me.
22                MR. MILLER:  We appreciate it, Your Honor.
23                THE COURT:  All right.
24                UNIDENTIFIED SPEAKER:  Enjoy the summer.
25                THE COURT:  Bye-bye.
```

1                           (Conclusion)

2                           *  *  *  *  *

C E R T I F I C A T I O N

    I, GINA M. CERMAK, the assigned transcriber, do hereby certify that the foregoing transcript of the proceedings before the United States District Court, District of New Jersey, on July 14, 2010, 10:38 a.m. to 10:50 a.m., is prepared in full compliance with the current transcription format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings to the best of my knowledge and ability.

| | |
|---|---|
|   S/ Gina M. Cermak | November 15, 2010 |
| GINA M. CERMAK | Date |
| AudioEdge Transcription, L.L.C. | |